The KANSAS CITY INVESTMENT COMPANY v. MARY J. FULTON.

No. 105.

1. LIMITATION OF ACTION — *Running in Favor of Trustee.* When one person holds the legal title to real estate as trustee for one who is the equitable owner, the statute of limitations will not run, as between them, until there is a renunciation of the trust, or until the party holding the legal title by some act or declaration asserts a claim adverse to the real owner.

2. ——— *Adverse Possession.* Open, notorious, exclusive possession of real estate is notice to the world of whatever title or interest the person so in possession may have therein.

3. ——— *Bona Fide Mortgagee.* The defendant in this action being in the actual, open, notorious and exclusive possession of the real estate in controversy at the time the plaintiff's mortgage was executed, and when the plaintiff acquired the same, the mortgage was taken and is held subject and inferior to the title of the defendant.

MEMORANDUM. — Error from Wyandotte district court; N. H. LOOMIS, judge *pro tem.* Action by The Kansas City Investment Company against Mary J. Fulton and others to foreclose a mortgage. Judgment for defendant Fulton. Plaintiff brings the case to this court. Affirmed. The opinion herein, filed September 9, 1896, states the material facts.

*Cook & Gossett,* for plaintiff in error.

*John A. Hale,* for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J.: On the 6th day of December, 1853, the defendant in error, Mary J. Fulton, was married to one William J. Fulton, and at the time of the marriage she was the owner of some property, William J. Fulton being insolvent. From time to time the defendant in error received money from her relatives, amounting to quite a sum, and in December, 1866, the said William J. Fulton, husband of the defendant in error, having this money in his possession, purchased certain real estate (it being the property in controversy in this action) of Isabelle S. Clements, it being understood and agreed that the title should be taken in the name of Mary J. Fulton. This was not done, and the deed was taken in the name of W. J. Fulton. In 1881 W. J. Fulton procured a divorce from his wife, Mary J. In 1885 Mary J. Fulton took possession of this property and has held the same ever since. In 1886 William J. Fulton and his then wife, Eliza, sold and conveyed this property to Caroline Milotte, and on the day of said sale Milotte and her husband executed a mortgage on this property to Garrard Chestnut and R. T. Darnell & Co., both of

the state of Missouri. The notes were by Chestnut and Darnell indorsed to one Mrs. Clara P. Buckner, or order, and by her indorsed to A. C. Buckner, or order, without recourse. In July, 1888, A. C. Buckner indorsed them to the Kansas City Investment Company, the plaintiff in this action, or order, without recourse. In April, 1889, the codefendants of Mary J. Fulton in this action brought suit against her for the recovery of this property, and judgment was rendered therein on October 7, 1889, against them in favor of said Mary J. Fulton. It also appears from the record that William J. Fulton, Garrard Chestnut and R. T. Darnell & Co. were and are nonresidents of the state of Kansas, and that the plaintiff in this action is a Missouri corporation.

On the 25th day of January, 1889, the plaintiff in error brought an action to foreclose this mortgage against Alphonse Milotte, the husband, and others, the heirs of Caroline Milotte, deceased, making Mary J. Fulton a defendant therein. There was no contest between the plaintiff in error and any of the defendants except Mary J. Fulton, who alleged as her defense that she was at the time of the commencement of this action, and for a long time prior to the 30th day of March, 1886, had been, the equitable owner of and in the open and notorious possession of all the real estate in said petition described, and that if ever said notes and mortgage were given, made, and executed, they were given, made and executed subject to her rights in said property, and that, at the time of taking the same, the payees and grantees thereto had notice of her occupancy and title, and took the same subject thereto. She also set out the proceedings had between her and her codefendants in the supplemental answer filed herein. To this plaintiff in error filed a

reply, admitting that the judgment referred to was rendered, and further alleging that the defendant Mary J. Fulton, during the month of August, 1880, had notice and knowledge that the title to the land was taken in the name of William J. Fulton, her former husband, when he purchased it, and that she took no action to enforce her equitable title or estate until the fall of 1885, when she took possession of the land without his knowledge or consent, and has since remained in possession without his or his grantor's consent; and further, that her cause of action accrued more than five years prior to the time she so took possession of said land.

The case was tried to the court. The special findings of fact and conclusions of law made by the court are as follows:

### "FINDINGS OF FACT.

"1. I find that the property in question was purchased by William J. Fulton, on or about the 31st day of December, 1866, with funds belonging to the defendant Mary J. Fulton, then wife of William J. Fulton, and that said William J. Fulton promised said Mary J. Fulton to take the title of said property in her name at the time it was purchased.

"2. I further find that, without the knowledge or consent of his wife, said William J. Fulton took the title of said property in his own name, and that said Mary J. Fulton supposed the title of the property to be in her name until some time in August, 1880.

"3. I further find that said William J. Fulton was divorced from said Mary J. Fulton upon or about the 31st day of March, 1881.

"4. I find that said Mary J. Fulton took no steps to assert her right to said property until some time in the fall of 1885, when she took possession of said property and has been in the open and visible possession of the same ever since.

"5. I further find that said William J. Fulton and

wife conveyed said property to said Caroline Milotte upon the 30th day of March, 1886, and that said Caroline Milotte and husband thereafter gave the mortgage sued upon herein.

"6. I further find that there is due to the plaintiff, from defendant Alphonse Milotte personally, and John Gibson as administrator of Caroline Milotte, deceased, the sum of $588.92, bearing interest at the rate of 8 per cent. per annum, and its costs herein expended, and that the conditions of its mortgage have been broken.

"7. I further find that the defendant Mary J. Fulton was informed, in the month of August, 1880, that the title to the property was in the name of William J. Fulton, and that she took no steps as above found to assert her right in said property until some time in the fall of A. D. 1885, when she took actual possession of the same, and that during said period she was under no legal disability from asserting her said rights.

"8. I further find that the plaintiff did not appear in, and was not a party to, the suit of Alphonse Milotte and others against Mary J. Fulton, as alleged in the answer of said Fulton filed in this cause, and is not estopped by the proceedings in said cause."

"CONCLUSIONS OF LAW.

"1. That at the date of said conveyance from William J. Fulton to Caroline Milotte said Mary J. Fulton had the equitable title to said property, and that said equitable title was paramount to the legal title of said William J. Fulton.

"2. That the plaintiff was charged with notice of the possession of said premises by said Mary J. Fulton at the time it obtained the mortgage upon the same.

"3. That the plaintiff take, so far as the defendant Mary J. Fulton is concerned, naught by this suit, and that she have and recover her costs herein.

"4. That the plaintiff is entitled to recover of and from the defendant Alphonse Milotte personally, and John Gibson as administrator of Caroline Milotte, deceased, the sum of $588.92, bearing interest at the rate of 8 per cent. per annum, and that, as against all of

the defendants excepting Mary J. Fulton, it is entitled to foreclosure of its mortgage, but that, as the land herein described is the property of Mary J. Fulton, as aforesaid, no decree of foreclosure will be given, the said mortgage for such reason not being a lien upon said land."

We cannot agree with plaintiff in error that the court overturned a legal title without substantial testimony. On the contrary, we think the testimony in this case supports the conclusions of law as found by the trial court by an overwhelming preponderance thereof, and is of the strongest kind possible to be presented in a case of this nature. The findings of fact are not questioned, nor could they be, for they are supported by all of the testimony in this case, and it is clearly shown that the fund with which this property was purchased was received from and belonged to the defendant Mary J. Fulton, and that the property was purchased with the express understanding that the title should vest in her.

"When the legal title to real estate is in one person, and the real interest is in another, the statute of limitations will not run as between them until there is a renunciation of the trust, or until the party holding the legal title, by some act or declaration, asserts a claim adverse to the real owner."

There is no proof or attempt to prove that W. J. Fulton ever denied the trust, nor was there any act of hostility done or adverse claim made by him until the very transaction upon which the claim of the plaintiff is founded occurred, viz., the the sale of this property to Caroline Milotte. And at the time Mrs. Fulton was in open, notorious and exclusive possession; and Mrs. Milotte, therefore, took the title subject to the trust — purchased with notice of this possession. The plaintiff purchased the notes and mortgages with the same no-

tice — all the parties were bound thereby — of whatever title Mrs. Fulton had, and neither obtained any title which can be asserted against the defendant. (*Greer v. Higgins*, 20 Kan. 420.)

It is well established that open, notorious and exclusive possession of real estate under an apparent claim of ownership is notice to the world of whatever claim the possessor asserts, whether such claim is legal or equitable. (*Moore v. Reaves*, 15 Kan. 150; *Johnson v. Clark*, 18 id. 157; *School District v. Taylor*, 19 id. 287; *Tucker v. Vandermark*, 21 id. 263; *Bruce v. McBee*, 23 id. 382; *McNeil v. Jordan*, 28 id. 16; *Deetjen v. Richter*, 33 id. 414.)

Under these circumstances it was incumbent upon the plaintiff to inquire, and to pursue its inquiry until it ascertained the nature of the possessor's claim, and failing to do so, the law treats it precisely as though it had so acted and learned all that might have been ascertained thereof. ' Milotte purchased, therefore, subject to all the equities of Mrs. Fulton, and the plaintiff took its mortgage subject to the same. As said in *School District v. Taylor*, supra, "When it comes to comparing equities between the parties," those of the defendant would enhance by her possession of the property. Her equities are prior in time, and therefore prior in right. The defendant was in possession of the property when the plaintiff's equities were created, and constituted such a strong and paramount equitable title to the property that no mere legal title could overthrow it. And where a grantee purchases with knowledge of the trust, he takes no greater interest than his grantor had.

With reference to the admission of certain testimony of the defendant, because of the marriage relation existing between her and William J. Fulton at

the time: This testimony consisted of (1) transactions had between Mrs. Fulton and her then husband. as to the furnishing of the funds to purchase this property; and (2) communications made by him to other persons as to the title of this property, in her presence and hearing. We think the testimony was competent as to the first, for the reason that they were all transactions in which he was acting as her. agent, and fall within the statutory exception. As to the second, such testimony is clearly admissible. (*Higbee v. McMillan*, 18 Kan. 133.) But if this testimony had all been excluded there would still be ample testimony to support the finding of the court that the property was purchased by William J. Fulton with funds belonging to the defendant Mary J. Fulton.

We perceive no error in the rulings or judgment of the court below. The judgment in this case will therefore be affirmed.

All the Judges concurring.